Good morning, your honors. May it please the court, James Knox on behalf of Nina Jafari. Your honors, there's a couple of things that were clearly undisputed at trial that I think go to the heart of many of the issues I raise in the brief. One of those is that the billing code system is something that is very technical and the expert on the billing code system that the government put on conceded that it was something that practitioners didn't necessarily understand and that the interpretation and application of the billing code system was one that was then nevertheless left up to the practitioner. In this case, there was a lot of testimony, I'm sure the court has read, about the applicable billing code time ranges for patient appointments. Did you have to know them in that detail to know that when you bill 20 hours in a 24-hour day that there may be something wrong with it or when you bill for individual sessions all the time even though they were group sessions? Did you have to have a complete understanding of the system to know that maybe that's wrong? I take your point, your honor, but I think you're also referring to some of the evidence that was given in a general fashion by the person from Blue Cross Blue Shield who was supposedly the expert on this and this was not the evidence presented by individual patients. Patients didn't testify about that? There was joint sessions rather than individual sessions and that they weren't 75, 80 minutes long, they were only on some occasions 30 minutes long? There were some patients that testified that, but there were other patients that testified, for example, as to I think it's count two, that there was a husband and a wife and there had been this billing for individual sessions. He says he came and he was there for some amount of time during his lunch hour. His wife would be there before him, his wife would be there after him. He didn't know how long she was there before or after he was there and there was no evidence presented as to how long that person's wife was there. We're on sufficiency review and we have to be able to say that no reasonable jury could find guilt based on this record when all of the evidence is looked at in the light most burden. Tell us how we could conclude that no reasonable jury could have found guilt. Well, as the court knows, one count was acquitted and the testimony… That suggests that the jury understood its responsibility. Help us out. I recognize that. Why didn't they find guilt on the counts they did find? Because the testimony of the patient witnesses, taking aside Jeanette Steger's testimony, that's count one, the testimony as to counts two through five by the patient witnesses was essentially the same in that their recollection, like Mr. Ferrucci, that was the acquitted count, they could not recall specific appointments. There were glaring admissions, as I mentioned before, as to the details of the other patient, when they exactly were there, the co-patient. There's really no difference. There were five patients who testified that the records did not reflect the services they received. There was also evidence that the patient was told to withhold information from the insurer about the patient's appointments with Jafari, that patients were instructed to claim on an insurance survey that all of the sessions were 75 to 80 minutes in length when that was not their recollection. So how are you saying that a jury was unable to find fraud on this record? Well, let me go to the particular point that you're raising here with regard to, I think, Ms. Stager and the suggestion on the audio tapes by Ms. Jafari that she report particular times for particular appointments. The explanation for that that's equally consistent with Innocence's guilt is that Ms. Jafari simply wanted to make sure that the reporting by the patient was accurate based on the appointments that Ms. Jafari knew that Jeanette Stager had attended. Equal poise is not a principle that even if it's applicable is applied to each piece of evidence. To the contrary, each piece of evidence has to be viewed in the light most favorable to the government. And then when all of that is done, perhaps equal poise comes into play. So we start with the notion that all those inferences about those conversations bespeak fraudulent intent. And that's the problem for you here. Well, I understand what the court is saying. But basically she was telling the patient to lie. What you're saying is, if I take your point, that that's an inference that could just as easily be drawn. And because it could be drawn, we have to assume it was. One of the reasons I raise the insufficiency argument, though, Your Honor Do you agree that the jury here could have found that she was telling her patients to lie? Well, they certainly did find that, apparently. But you're saying no reasonable jury could have so found? That's the basis of our argument, Your Honor. Because there was no actual evidence of Ms. Jafari's intent. Other than the only evidence of her actual direct evidence of her intent or motive to do this was the implication of the fact that she's profiting by this, but also the government's introduction about the judgments filed in Erie County against Ms. Jafari that was in direct contravention of the court's pretrial order in the case. But I thought the understanding was the patients that it was established that not all of these sessions were 75- to 80-minute individual sessions, and yet here's a client telling patients to say that. To say that, well, but Your Honor, one of the points that I think we are skipping over, which I feel that the jury unreasonably did here as well, is that we keep saying, everyone here keeps saying 75- to 80-minutes, and I kept doing it in my brief myself, but the standard is approximately 75- to 80-minutes. There is no billing code for what happens when you have a session that's between 50- to 75-minutes. There were several patients who testified that they never saw the defendant alone. They always saw it with family members. They never spent 75- to 80-minutes. But even if they never— There was a lot of testimony to that effect, right? There was testimony to that effect, but there are, as to a couple of those counts, there is not comprehensive testimony to exhaust the possibility that the meetings, the sessions— That wild comprehensive testimony to exhaust the possibilities? Well, I may be phrasing it too strongly, Your Honor, but there is a giant range of minutes between 50 and 75 here that essentially the proof was that that interpretation of what code to bill under was left to the— Ms. Stager testified that their joint visits lasted 30 minutes, and that's nowhere close to 75 or 80. I understand that, Your Honor, and that's why I put Ms. Stager's testimony into its own category for purposes of the appeal. Do you want to touch on any of the other issues that you've briefed? You don't have to. We have your brief, but because your time is running out— Thank you, Your Honor. I did want to touch on the two, probably what I think are sort of an egregious occurrence at the trial is this issue about the judgments. The court had ruled ahead of time that those could not be introduced without notice. The way I read that order, and I know that the government reads it differently in their brief, but it clearly says that the court is saying, look, if you're going to start bringing up these judgments, you need to let us know you're going to do that ahead of time, not meaning ahead of time in some sort of vague sense that it was in the discovery or that it was mentioned or the defendant knew about it, but that if you're going to bring that topic up, you need to give the defense a chance ahead of time to rule or to make an objection after the objection. It's opening, right? Yes, Your Honor. And the jury was told to disregard that opening statements are not sources of evidence, and then there was no evidence concerning those judgments, or did I overlook something? I don't believe there was ever any specific— the opening and closing statements aren't— You're arguing that this was impermissible variance for constructive amendment, and with no evidence and it not going to the jury on this theory at all. I don't know how you make that argument. There was a mistake in reference in opening. Well, it certainly is a prejudicial error to my client because— What did you seek from the court besides the instruction the judge gave? There was—the defense counsel at trial sought no instruction, Your Honor. They didn't—and that was—I know you're— And the court was—and the jury was told that opening statements are not evidence, and we presume juries follow instructions, so how does any of this warrant relief? Well, it warrants relief in that it was both a violation of the court's pretrial ruling but also because it's further evidence, and I know the court's read my arguments about ineffective assistance, because the defense counsel said at a sidebar that he was going to be requesting a specific instruction with regard to that statement after the court had overruled his objection, and then he never did, and that was one of the— Wasn't there a specific statement after the Schultz testimony about something like that, of 404B? It wasn't just the final instructions to the jury. There was a specific instruction after the Schultz testimony, right? You've heard testimony that the defendant allegedly committed other acts than the ones charged in the indictment, et cetera. When was that given? That, I think, Your Honor, was really relevant to the billing code expert—the auditor that had— that's my other argument about how they expanded the— Schultz, though. Yeah, I think that is Schultz. But it was—this instruction was given separate from the final instructions to the jury. Yes. But I don't think that that was in any way addressed to the comment about the judgments that had been entered against Ms. Jafari. Good morning. May it please the Court, Michael DeGiacomo on behalf of the United States of America. If I could, Your Honors, I would like to start by touching on the statement of counsel that, starting with the judgments, there was a reference of the judgments during opening statements. But if you go back and look at the record, the government had filed a motion in limine seeking to introduce information regarding Blue Cross and Blue Shield's investigation into the defendant, what they did, what they had learned, and all of that. How is that relevant to saying that there are judgments against her, and that's the motivation for trying to make more money? That's the inference, right? She was desperate for money. That's why the government mentioned that. How is that relevant to the Blue Cross investigation? Well, Your Honor, that was part of the Blue Cross investigation. And what was going to come in through the testimony was through Susan Schultz, who was the lead investigator on the case, is that when they started this investigation, they did a variety of things. They determined, one, that she was billing excessively at the 75 to 80 minutes, and then they dug a little deeper, and they found the judgments with respect to Ms. Jafari. So hence, knowing all that in advance, I put it and listed it on our exhibit list, and hence filed a motion in limine seeking the introduction of Blue Cross and Blue Shield's investigation into the defendant. The motion in limine referred to this judgment stuff? It didn't refer to the judgments per se. It was just with respect to their overall investigation. And on page 42 of the government's appendix, I believe Judge Bulford says during the oral argument of this, that the government wants to introduce evidence of Blue Cross and Blue Shield's findings and investigation into the defendant. And there's further discussion with respect to that. And then the court says that I'm going to grant that, and the government understood that we can get into the information regarding Blue Cross and Blue Shield's investigation. So when the judgment reference was made during opening arguments, we had a good faith basis that since that was coming and part of Blue Cross and Blue Shield's investigation, that wasn't per se the government's investigation that we went, that would be permissible. And we go back to the oral argument on the motion in limine, Your Honor, Judge Bulford had clearly indicated that, you know, I'm going to allow it, but counsel, if we start getting a little bit too prejudicial, you can raise your objections and we'll revisit this under 403. And if you look at when the reference was made during opening argument, the reference was made and counsel for Ms. Jafari said, Judge, I object if it's offered. It's clearly within the parameters of what the government had understood the court's ruling to be. And I believe there was a question to my adversary here as to whether or not those judgments were entered. Those judgments were never entered. After it was referenced, if you look, there was further discussion. It just wasn't at the objection during the opening statement. There was also the judge revisited this issue on two separate occasions. And I believe on page 150 of the government's joint appendix, there's discussion where the court says they revisit the admissibility of the judgments and they take it under advisement. And then further in government's appendix at I believe it's page 226, this judge says, you know what, I think it would be admissible and it would be admissible under 404B, but since you didn't give proper notice per se of these judgments, although defense counsel was aware of them, with that being said, I'm going to preclude them out of fairness. At no point in the record were the judgments entered, and at no point did the district court judge find that they were inadmissible because the government overstepped the court's order. That's never been part of the record, and it wasn't the record fully supports that the district court judge gave this extensive consideration. And then when precluded it, precluded it for the reason of notice, not based on a violation of the court's pretrial ruling and or order. So with that, Your Honor, we don't believe, Your Honors, we don't believe that the mere reference of a judgment, of the defendant having judgments during an opening statement, of which the court has pointed out that Judge Wolford overruled and indicated and instructed the jury that, in fact, that's not evidence, and the mere fact it's no way a constructive amendment that referencing a judgment in opening statements is something that we've modified an essential element of the charge defense to the point that there's a substantial likelihood that Ms. Jafari was convicted of some other, based on evidence of some other offense. It's just not the case. And with that being said, we believe that Judge Wolford appropriately exercised her discretion as a district court judge has a better opportunity and ability to review and consider the evidence that's going to be allowed into a case at trial. They are in the best position, being the trier of fact, to determine what's relevant and what's evidence that perhaps to demonstrate a defendant's motives, plan, lack of mistake, or opportunity. And I think that that point is driven home further when you look at the defense of the case. And as raised in counsel, and I'd like to move on if the court has additional questions, but I'll answer them, but I'd like to go on to the sufficiency argument. There was questions with respect to sufficiency. In the appellant's brief, the focus of the sufficiency argument is that the case consisted strictly of patient testimony. Patient testimony was a major component of the case. I will agree with that. But there was also, in addition to the patient testimony, we talk about the CPT codes that were involved in here. And, yes, they are time determined, 30 to 40, 75. And there's a question as to whether or not, you know, what happens if there's an overlap. But we can't lose sight of the fact that this wasn't just a conviction based upon did she meet them for 30 minutes and she should have billed 40 or she met them, you know, for 25 and she should have billed 30. You have to look at the overall scheme. The scheme involved not just falsely representing the time that she spent with the individual patients, but she also was submitting claims on days, as Ms. Steger pointed out, on days that, in fact, her family never went. So you have not only falsely representing the time, falsely submitting bills for patients that, in fact, she never saw, on days she never saw them, and you also had, excuse me, the defendant's own words. Now, I know it's part of the transcript or the appendix, excuse me, but the recorded telephone call or the recorded phone calls and then recorded conversations between Ms. Steger and Mr. Fari were pretty compelling. The transcripts really don't do it any justice. And the judge pointed out during her sentencing, and I know that's one of the issues raised, but if I could just point to sections of the government's appendix at 533 and 534, she's telling Ms. Steger she'll help her fill her out those forms that Blue Cross and Blue Shield had and, you know, fill it out for 75 to 80 minutes and that they're individual sessions. At page 550 of the government's appendix, she tells Steger to tell Blue Cross and Blue Shield that she went to see her one to two times a week. Government's appendix, page 47. If you feel, Ms. Steger, that in fact you are being threatened or intimidated, I'll call my lawyers and tell them to call on your behalf. 517 of the government's appendix, don't show your calendar. I'll give you the days that you need to give them. It's more, the evidence before this jury was more than just the patient's recollection of the time that they spent. Mr. Polano, or Ms. Jafari's counsel at the time during trial, made an argument and his whole part of his theme throughout was the fact that, yes, patients couldn't recall exactly the exact time, but a lot of them were pretty adamant that it was never 75 to 80 minutes, and in fact a lot of times it was joint sessions for 30 minutes or less. We talked about Ms. Steger saying it was 30 minutes for her and her husband in a joint session. We also, the court had testimony from, I apologize, from Mr. Gary Willis, which is the government's appendix 361 to 366. If you look at the billing records submitted by the defendant on behalf of Mr. He says he and his wife met with Ms. Jafari when they took their son there for maybe five to ten minutes, and then the son went in for maybe 30 to 40 minutes. And when you look at the records that Ms. Jafari billed for, she was billing for 75 to 80 minute sessions for Mr. Willis, Mrs. Willis, and their son. At no point were any of the patients there for over three hours. So yes, the case did rely on patient testimony and their recollection, but in the overall grand scheme of all the evidence that was before, I believe that the jury made the right decision and convicted Ms. Jafari. I know the court, there was other issues raised by counsel. If the court wishes me to address any of the sentencing issues, I'd be happy to do so. Otherwise, with that being said, as my time is about to expire, I will sit down. Thank you. Thank you. Well, I'd like to use my minute, if I may, Your Honor, to address the sentencing issue that I raised. We usually expect you to rebut what was said by the other side, but we'll let you. Thank you, Your Honor. I just want to reemphasize to the court the way in which the district court judge specifically disavowed, from defense perspective, the defendant's character and history in saying, when she said that she thought that there should be no difference based on social or economic background of various defendants. In this case, the defendant's background is a compelling one, as detailed in the brief, and to specifically disavow what I think is her history, which is the social and economic background as part of that, is in direct violation of the rule that she considered the relevant factors. Thank you. Thank you. Thank you to both sides. We'll take the matter under advisement.